**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEITH JENNINGS,

                              Plaintiff,

          - v -                                   Civ. No. 9:02-CV-1405
                                                            (LEK/RFT)

DEPARTMENT OF JUSTICE SERVICE,
JOSEPH CICIARELLI, *Deputy U.S. Marshall*;
DEPUTY McDERMOTT, *U.S. Marshall*;
AMORA, *Deputy, U.S. Marshall*;
JOHN DOE, *(One) Deputy U.S. Marshall*;
JOHN DOE, *(Two), Deputy U.S. Marshall*;
TED GLOE, *Chief Deputy U.S. Marshall*,[1]

                              Defendants.

**APPEARANCES:**                                     **OF COUNSEL:**

KEITH JENNINGS
Plaintiff, *Pro Se*
56306-053
USP Allenwood
Box 3500
White Deer, PA 17887

HON. GLENN T. SUDDABY                         CHARLES E. ROBERTS
United States Attorney                                   Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton St.
Syracuse, NY 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

---

[1] The title of this action at its inception was *Jennings v. Five Unknown United States Marshals*. By Order dated October 24, 2005, the Honorable Lawrence E. Kahn, United States District Judge, accepted Plaintiff's Amended Complaint identifying the unknown Marshals and directed the Clerk of the Court to change the caption accordingly. Dkt. No. 46.

*Pro se* Plaintiff Keith Jennings brings this civil rights claim seemingly pursuant to 42 U.S.C. § 1983 alleging several federal U.S. Marshals used excessive force against him and then failed to adequately treat his serious medical injuries in violation of the Eighth Amendment. Dkt. No. 45, Am. Compl. at ¶¶ 19-22 & 32-33. However, since the individual Defendants are federal officers, the § 1983 claims will be treated as *Bivens* claims.

*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens* action is a judicially-created remedy); *see also Carlson v. Green*, 445 U.S. 14, 18 (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities. *See Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998). Generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d at 84).

Defendants have filed a Motion for Summary Judgment (Dkt. No. 76), which Plaintiff opposes (Dkt. No. 80). For the reasons that follow, we recommend that Defendants' Motion be **denied** in part and **granted** in part.

## I. PROCEDURAL HISTORY

A recitation of the procedural history in this action is warranted. On January 4, 2000, Plaintiff was ejected from a Sentencing Hearing by the Honorable Howard G. Munson, then-Senior

United States District Judge.  Am. Compl. at ¶¶ 15-17.  Judge Munson removed Plaintiff after he fired his lawyer and repeatedly interrupted others while asserting that the court had no jurisdiction over him.  *United States v. Jennings*, 2000 WL 98114, at *2 (N.D.N.Y. Jan. 24, 2000).  Plaintiff alleges that after being physically removed from the courtroom in shackles he was knocked unconscious, kicked, and repeatedly punched by five U.S. Marshals, who then dragged him into a holding cell and threw him on the concrete floor.  Am. Compl. at ¶¶ 19-22.  Plaintiff further alleges that the five Defendants failed to provide adequate treatment for the injuries he sustained.  *Id*. at ¶¶ 32-33.

Plaintiff filed his *pro se* Complaint on November 6, 2002 asserting claims against "Five Unknown U.S. Marshals."  On November 19, 2002, after reviewing the submitted Complaint, along with an Application to Proceed *In Forma Pauperis*, the Honorable Lawrence E. Kahn, United States District Judge, ordered Plaintiff to take reasonable steps to ascertain the identity of each of the unknown Defendants and to amend his Complaint within sixty (60) days of the filing date of that Order in order to avoid dismissal.  Dkt. No. 3.[2]  Plaintiff did make efforts to acquire the names of the unknown Defendants, but to no avail.  Dkt. No. 6, Pl.'s Mot. to Compel.  On December 30, 2002, Plaintiff initiated a Motion to Compel, wherein he sought court intervention in light of the difficulties he had experienced in ascertaining the identities of the John Doe Defendants.  *Id*.  In his Motion to Compel, Plaintiff set forth the steps he took in an effort to obtain such names.  *Id*.  Plaintiff averred he contacted the Onondaga County Sheriff's Office, the United States Marshal's Office for the Northern District of New York, and the Office of General Counsel, Justice Department, for information about the identities of the Defendants who allegedly assaulted him.  *Id*.

---

[2] This Order was signed by Judge Kahn on November 19, 2002, however, the Docket Report indicates an entry date of November 22, 2002.  *See* Dkt. No. 3.

Jennings' requests were in the form of a Freedom of Information Request, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Jennings' attempts were unsuccessful.[3]

On February 6, 2003, in addressing Plaintiff's Motion to Compel, this Court ordered the United States Marshals Service (USMS) to file an affidavit with the Court showing cause "why the employee roster for January 4, 2002 for the James T. Hanley Federal Building, Syracuse, New York (in redacted form if necessary) designating courtroom or judge assignment, should not be produced to Jennings." Dkt. No. 8.[4] Also on February 6, 2003,[5] Judge Kahn, in light of the Order to Show Cause generated by this Court, gave Jennings an additional ninety (90) days, from the date this Court made a determination on the Order to Show Cause, to amend his Complaint. Dkt. No. 9.

On March 5, 2003, in response to this Court's Order to Show Cause, the USMS and the Department of Justice (DOJ) filed a Motion to Dismiss, accompanied by two Affidavits. Dkt. Nos. 12-15. In their Motion to Dismiss, filed pursuant to FED. R. CIV. P. 12(c), the Government urged the Court to not compel production of the roster because, under the relation back doctrine governing the amendment of pleadings, the statute of limitations would have run on Plaintiff's claims and, due to the applicability of the doctrine of laches, Plaintiff's request would therefore be time-barred. Dkt.

---

[3] As the Court was later apprised through the Government's submissions, Jennings' FOIA request for the names of the Marshals was denied pursuant to an exemption listed in 5 U.S.C. § 552(b)(7)(C), which allows, as explained in the denial notice,

> an agency to withhold records or information compiled for law enforcement purposes, to the extent that disclosure of such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. A discretionary release of [the information Jennings seeks] is inappropriate because of the significant privacy and personal safety concerns of our personnel stemming from the law enforcement functions of this Bureau.

Dkt. No. 24, Florastine P. Graham, Freedom of Information/Privacy Act Officer, Aff., Ex. 3; *see also* 5 U.S.C. § 552(b)(7)(C).

[4] This Order was signed by this Court on February 6, 2003, however, the Docket Report indicates an entry date of February 11, 2003. *See* Dkt. No. 8.

[5] This Order was signed by Judge Kahn on February 6, 2003, however, the Docket Report indicates an entry date of February 11, 2003. *See* Dkt. No. 9.

No. 15, Mem. of Law. Moreover, the Government stated that the production of the duty roster would expose the unknown John Doe Defendants to unnecessary danger. *Id*. Plaintiff opposed the United States's Motion to Dismiss. Dkt. No. 18.

On June 3, 2003, this Court issued a Report-Recommendation and Order, recommending denial of United States's Motion to Dismiss. Dkt. No. 20. Based on the record before us, we found that the Government shared some of the blame with regard to Plaintiff's delay and troubles in ascertaining the John Doe identities. *Id*. at pp. 6-8. Due to such "culpable" involvement, we found that the Government was equitably estopped from setting forth a laches argument. *Id*. With regard to the submissions in response to our Order to Show Cause, this Court ordered the USMS to produce the requested roster. *Id*. at p. 8.

The Government filed a Motion for Reconsideration of the June 4, 2003 Report Recommendation, arguing that the Plaintiff made misrepresentations to this Court by withholding facts about his attempts to acquire the names of the John Doe Defendants, and therefore the Court had based its determination to grant the Order to Compel the employee duty roster on factual mistake and/or fraud. Dkt. No. 22. The Government further argued that producing the duty roster would compromise the unnamed Defendants' safety.[6]

In response, this Court issued a Report Recommendation and Order directing Defendants to produce the duty roster notwithstanding their aforementioned arguments. Dkt. No. 31. We further concluded that the Defendants' Motion to Dismiss was procedurally premature because no summons nor complaint had been served on any Defendant at that point, and we therefore denied Defendants' Motion to Dismiss without prejudice, stating that the "government shall be entitled to renew any

---

[6] It was alleged that Plaintiff has "repeatedly threatened to kill the prosecutor assigned to his case." Dkt. No. 22.

dispositive motion available to it at such time as summonses, if any, are served upon it." *Id.* at p. 14. Because we found Defendants' dispositive motion procedurally improper, judgement on the merit of Defendants' statute of limitations argument was held in abeyance. *Id.*

The Defendants' objections to that Report Recommendation and Order were denied by Judge Kahn, who ordered the Marshals Service to produce the employee roster for January 4, 2000, within twenty (20) days of the filing of that Order. Dkt. No. 41. Plaintiff subsequently filed an Amended Complaint against the Defendants named in the caption above. Dkt. No. 47. Defendants now move for Summary Judgment, which is opposed by Plaintiff. Dkt. Nos. 76 & 80.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts

showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Statute of Limitations

Defendants contend that Plaintiff's claims are barred by the statute of limitations (SOL). The SOL in New York for bringing a *Bivens* claim is three years from the accrual of the claim. *Malesko v. Corr. Servs. Corp.*, 229 F.3d 374, 383 (2d Cir. 2000). A claim accrues when the plaintiff "knows or has reason to know" of the harm. *Eagleston v. Guido*, 41F.3d 865, 871 (2d Cir. 1994). As Plaintiff's claim accrued on January 4, 2000, the date of the alleged incident, his original Complaint filed on November 6, 2002 was within the three year SOL. Dkt. No. 1. However, Defendants claim that because the Complaint did not specifically name the Defendants (thus constituting a "John Doe Complaint"), the statute of limitations did not toll at that time. Dkt. No. 76, Defs.' Mot. for Summ. J., Mem. of Law at pp. 14-21. Therefore, absent any relation back tot he original Complaint, Defendants argue that Plaintiff's Amended Complaint, filed on November 14, 2005, was untimely. *Id*.

It has been held that "replacing a 'John Doe' with a named party in effect constitutes a change in the party sued" and thus "[s]uch an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993) (internal citations and quotation marks omitted). Pursuant to FED. R. CIV. P. 15(c), an amended pleading will "relate back" to the date of the original pleading when (1) the claim asserted in the amended pleading arises out of the same conduct or transaction set forth in the original pleading; (2) within 120 days after the filing of the original complaint, the party to be added receives such notice "that the party will not be prejudiced in maintaining a defense on the merits;" and (3) the party added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

Defendants do not challenge the first and second requirements for an amended complaint to relate back under Rule 15, rather, they allege that no "mistake" was made under the third requirement. Defendants rely on *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995), *modified*, 74 F.3d 1366 (1996), for the proposition that when a "John Doe complaint" is filed under circumstances where the plaintiff does not know the identity of the defendants, as opposed to when the identity of the defendants is *mistaken*, any amended complaint filed thereafter will not "relate back" to the initial complaint under FED. R. CIV. P. 15(c). *Barrow v. Wethersfield Police Dep't*, 66 F.3d at 470 ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.")

This case is distinguishable from *Barrow*. First, whereas the plaintiff in *Barrow* failed to follow an explicit direction from the court to obtain the defendants' identities, the record in this case shows that Jennings took reasonable steps, both before and after his initial Complaint was filed, to ascertain the identity of the Marshals who allegedly assaulted him. Prior to filing his claim, on January 9, 2001, Plaintiff filed a Freedom of Information Act (FOIA) Request with the Onodaga County Sheriff's Office, who then referred Plaintiff to the United States Marshal's Service. Dkt. No. 76-9, Ex. I, Sheriff's Resp. to Pl.'s FOIA Request, dated Jan. 9, 2001. Plaintiff then filed his FOIA request with the United States Marshals Service in Washington, D.C., asking for the names of the Marshals who were charged with transporting him to and from court proceedings on January 4, 2000. *Id*., FOIA Request, dated Mar. 12, 2001. That request was denied on April 3, 2001, because of "the significant privacy and personal safety concerns of [the Marshal's] personnel stemming from the law enforcement functions of [the Marshals]. *Id*., FOIA Resp., dated Apr. 3,

2001.[7]

After filing his initial Complaint, Plaintiff was ordered by Judge Khan, on November 22, 2002 to "take reasonable steps to ascertain the identities of the John Does" lest the action be dismissed.  Dkt. No. 3 at p. 3.  Ostensibly in response to that Order, Plaintiff sent a request for information to the U.S. Marshal in Syracuse, who then referred Plaintiff to the same Marshals Service in Washington, D.C., that had previously rejected his FOIA request.  Dkt. No. 76-9, Ex. I, Lt. from U.S. Marshal in Syracuse, dated Dec. 2, 2002.  On December 30, 2002, Plaintiff filed a Motion to Compel the U.S. Marshals to identify his alleged assailants, to which the Defendants responded with a Motion to Dismiss based on untimeliness.  Dkt. Nos. 6 & 12.

Thus, Plaintiff made several ill-fated attempts to discover the identity of the John Does before the SOL period lapsed, both on his own initiative and in compliance with Court Orders.  By contrast, the plaintiff in *Barrow* failed to make any effort to discover the names of the John Doe defendants until after the SOL period had run.  It is not disputed that the information needed to identify the Marshals who allegedly attacked Plaintiff was possessed solely by the Marshals Service.  Plaintiff, a *pro se* inmate, could not have filed a proper complaint within the SOL absent the release of such information by the Marshals Service.

Defendants assert that because Plaintiff failed to appeal the rejection of his FOIA request after its rejection by the Marshals Service, and also because Plaintiff filed that FOIA Request fifteen (15) months after the initial incident and then waited another nineteen (19) months before he made another request for such information, Plaintiff is responsible for allowing the SOL to lapse.  Defs.' Mot. for Summ. J., at pp. 21-24.

---

[7] *See supra* note 3.

As we noted in a previous Order, Plaintiff was not required to pursue his FOIA requests through every administrative level prior to initiating his *Bivens* action. Nor were such appeals a prerequisite to seeking intervention from the Court once his *Bivens* Complaint was filed. *See* Dkt. No. 31 at p. 13. To the extent Plaintiff delayed in filing his Complaint after his FOIA request was rejected, we note that said Complaint was still filed within the SOL period. Although this *pro se* Plaintiff did not pursue every available administrative recourse available to him, he did make several reasonable attempts to acquire the names of his alleged assailants. "To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended," including when such resistance, as in this case, is based upon purportedly countervailing interests on the part of the defendants and administrative procedural mistakes on the part of a *pro se* Plaintiff. *Byrd v. Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997); *see also Howard v. City of New York*, 2006 WL 2597857, at *5 (S.D.N.Y. Sept. 6, 2006) (recognizing that several district courts have modified *Barrow* because the rule espoused therein "may yield harsh results.").

We find, therefore, that Plaintiff has made a "mistake" for the purposes of Rule 15(c), and his Amended Complaint therefore relates back to his initial Complaint. Thus, the SOL does not bar Plaintiff's claim.

### C. Excessive Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) subjectively, that the Defendant acted wantonly

and in bad faith, and (2) objectively, that the Defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Regarding the objective element of our Eighth Amendment analysis, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency are always violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a *per se* violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d at 1033. To determine whether a defendant acted maliciously, several factors should be examined, including "the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to

temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d at 105).

In this case, Plaintiff alleges that after Judge Munson directed the U.S. Marshals to remove him from the courtroom due to his disruptive behavior, the Marshals physically removed him from the courtroom and, once outside the courtroom, knocked Plaintiff to floor and punched and kicked him. Am. Compl. at ¶¶ 17-19. After the alleged assault Plaintiff states he was dragged to a holding cell and thrown to the concrete floor. *Id*. at ¶ 22. Plaintiff states that during this alleged assault he was constrained by handcuffs and shackles, which were so tight that they tore his flesh and left scars. *Id*. at ¶¶ 20-21. The Defendants admit that Plaintiff was handcuffed and escorted to a cell containing a television for viewing the courtroom proceedings, but deny that he was beaten or otherwise mistreated. Dkt. No. 59, Ans. at ¶¶ 18-22.

Although the Marshals were ordered to remove Plaintiff from the courtroom, we find there is a question of fact as to whether they acted wantonly or in good faith once outside of the courtroom. Given Plaintiff's contention that he was assaulted while shackled and handcuffed, his allegations describe an excessive use of force contrary to contemporary standards of decency. *Blyden v. Mancusi*, 186 F.3d at 263. Whether or not Plaintiff's contentions are true is a matter of credibility best left to a tried of fact. It is not this Court's province on the record before us to make such credibility assessments. *See Scott v. Coughlin*, 344 F.3d at 290. Defendants' argument that Plaintiff must have suffered more than a *de minimis* injury in order state a valid Eighth Amendment claim is erroneous. As stated above, the wanton infliction of pain, by itself, constitutes a *per se* violation of the Eighth Amendment. *See Blyden v. Mancusi*, 186 F.3d at 262-63 (citing *Hudson v. McMillian* for the proposition that "[t]he key inquiry [in an excessive force claim] is whether the

alleged conduct involved unnecessary and wanton infliction of pain.") (internal quotation marks omitted); *see also Sims v. Artuz*, 230 F.3d 14 (2d Cir. 2000) ("[N]o [] showing of extreme injury is required when the claim is that prison officials used excessive force[.]"); *Beckford v. Portuondo*, 151 F. Supp. 2d at 216.

Furthermore, there are additional questions of fact as to the existence and extent, if any, of injuries Plaintiff allegedly sustained. Upon his return to Onodaga County Justice Center on January 4, 2000, the date of the alleged incident, Plaintiff filed a sick call request stating the U.S. Marshals beat him and knocked him unconscious and complaining of pain in his back. Defs.' Mot. for Summ. J., Ex. F., Sick Call Req., dated Jan. 4, 2000. Plaintiff's "Progress Notes" from Onodaga County Correction Health and Mental Heath Services indicate that on January 6, 2000, Plaintiff complained of pains inflicted by U.S. Marshals and was referred to sick call for an evaluation. *Id.*, Progress Notes, dated Jan. 6, 2000. Plaintiff was transferred to the Federal Correctional Institution in Otisville, New York (FCI Otisville) on January 7, 2000, and on that date filled out a medical history report in which he stated that "[e]xcept for diabetes I'm in good heath." *Id.*, Med. Hist. Rep., dated Jan. 7, 2000. In that report, Plaintiff did not check "yes" under the box entitled "Recurrent back pain." *Id*. Also, on January 7, Plaintiff requested an x-ray because he "was kicked in the chest [] 5 days ago." Defs.' Mot. for Summ. J., Ex. E, Radiologic Consultation Req., dated Jan. 7, 2000. The x-ray, performed on January 12, 2000, revealed "[n]o abnormalities[.]" *Id.*, X-ray Rep., dated Jan. 14, 2000.

Although the x-ray report and the medical history report may not support a conclusion that Plaintiff was seriously injured, neither do they disprove Plaintiff's allegations. There is no record of any medical evaluation from the days following the alleged assault beyond the aforementioned

x-ray of Plaintiff's chest, though Plaintiff made requests for medical attention on the day of the alleged incident and two days after. In the months that followed, Plaintiff continued to complain of back pain, for which he was given ibuprofen.[8] Defs.' Mot. for Summ. J., Ex. F, Medical Record, entries dated Jan. 31, 2000, Mar. 7, 2000 & May 16, 2000.

Defendants cite to *Jackson v. Fairchild*, 2007 WL 778133, at *2 (N.D.N.Y. Mar. 12, 2007), a case where an inmate who was treated with ibuprofen and other over-the-counter drugs did not show the "requisite urgency or degeneration necessary to implicate an Eighth Amendment right," presumably to show that Plaintiff has not made out a valid Eighth Amendment claim. Dkt. No. 76, Defs.' Mem. of Law at p. 11. However, the plaintiff in that case brought an Eighth Amendment claim based on deliberate indifference to a serious medical need. It appears Defendants have conflated the applicable Eighth Amendment standard in medical deliberate indifference claims, which requires a claimant to show he suffered from a serious medical injury, *see Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994), with the applicable Eighth Amendment standard in excessive force claims, which does not, *see Blyden v. Mancusi*, 186 F.3d at 262-63.

While the medical record before us suggests that Plaintiff did not suffer any serious injuries, as discussed above, Plaintiff need not prove a serious injury, rather, he must prove only that Defendants acted wantonly and in bad faith.

For all the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be **denied** on this claim.

### D. Deliberate Indifference

Plaintiff claims that the Defendants failed to "provide follow up examination and treatment

---

[8]

-15-

of the plaintiff's hand, ankle and back injuries[.]" Am. Compl. at ¶¶ 32-33. To state an Eighth Amendment claim for the denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In this case, Plaintiff has not named any medical personnel as defendants, rather, he asserts that the Marshals who allegedly beat him were deliberately indifferent to his serious medical needs. There is no evidence on the record that any Defendant was involved in the medical treatment Plaintiff received, nor does Plaintiff indicate why it was their duty, as Marshals, to be so involved in any physical examination or treatment. Similarly, there is no evidence that Plaintiff's medical needs while in the Marshals' custody necessitated immediate medical attention, nor that any Defendant denied Plaintiff access to medical treatment at any time. Because the Defendants were not personally involved in any of the medical treatment Plaintiff received, Plaintiff's claims in that respect should be **dismissed**. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (stating that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citations omitted).

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No.76) be **denied** as to Plaintiff's excessive force claims and **granted** as to Plaintiff's deliberate indifference claims; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 26, 2008
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge